UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | |
| JORDAN HOLLEY, : | Case No. 25-mj-215 |
| : | |
| Defendant. : | |
| : | |

## GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its request that defendant Jordan Holley be detained pending trial of this matter pursuant to 18 U.S.C. § 3142(f)(1)(A). On September 10, 2025, Mr. Holley traveled from Maryland to the District of Columbia intending to sexually abuse a nine-year-old girl. Mr. Holley was arrested and has been charged by criminal complaint with violating Title 18, United States Code, Section 2423(b) (travel with intent to engage in illicit sexual conduct). There is no condition or combination of conditions that will reasonably assure the safety of children in the community – both in the physical world and online – if Mr. Holley is released. As detailed below, an analysis of the factors set forth in 18 U.S.C. § 3142 leads to the conclusion that detention is the only way to protect children in the community and to ensure the defendant's future appearance.

## FACTUAL BACKGROUND

On Thursday, August 28, 2025, an FBI Task Force Officer (TFO) working with the Washington Field Office was acting in an undercover (UC) capacity as part of the Metropolitan Police Department-Federal Bureau of Investigation (MPD-FBI) Child Exploitation Task Force, operating out of a satellite office in Washington, D.C. In that capacity, the UC entered a fetish

1

website. Different areas of this site are known to the UC as places where people meet, discuss, and trade original images of underage children, links containing child pornography. On August 28, 2025, a user using the screen name "FeetAddict202" and stating his location to be Owings Mills, MD, later identified as Jordan Holley, initiated a private message chat with the UC within the fetish website.[1]

> The following is the chat between Mr. Holley and the UC on the fetish website:
>
> FeetAddict202: If you ever want to teach her about BBC[2] or cock in general, use me as a stunt cock for her practice.
>
> UC: lol i think we might be liked minded
>
> FeetAddict202: When I saw your post I figured we would be. Too many bulls scared to doit but im not. If you're going to introduce your daughter to the world of BBC and cock, why not have a real one for her to use as practice
>
> FeetAddict202: I am Brutus, and ill be your BBC you have your daughter practice with as you watch. How's that for kinky fun? (wink emoji)
>
> UC: where else do you like to chat I like where this is going
>
> FeetAddict202: "Kik, telegram, my number, even email. Pick any. I'm serious about this. Live action porn in your own home. Me and her. Our secret fun time.
>
> UC: whats your number
>
> FeetAddict202: 443-834-XXXX

On Thursday, August 28, 2025, the UC sent a message to 443-834-XXXX, stating, "It's Rob from [aforementioned fetish website]". The user responded, "Hey Rob. Its Brutus. Glad we

---

[1] The UC referenced having a young daughter on a group message within the fetish website.

[2] BBC is commonly used as slang for "big black cock."

2

met." The following is a portion the text messages sent between the UC and Mr. Holley:

>UC: Yes not fantasy right
>
>MR. HOLLEY: Correct. Real life. I have experience with daughters and fathers, you found the right bull for the job
>
>UC: Ok any age limits before we discuss my girl not trying to get caught up
>
>MR. HOLLEY: No sir. Only a number for me
>
>UC: Fuck yeah we are very like minded
>
>MR. HOLLEY: Perfect. I understand wanting to be careful. Most wouldn't do this but I am a special bull.[3] 1 for families. Even when divorced. A father deserves to know how his daughter handles cock
>
>UC: Well to be honest she plays with mine and had an old college buddy in town about six months ago and loved watching her sucking his cock
>
>MR. HOLLEY: That's real hot. A true good daughter. Is she a virgin or has that been taken care of?

As the chat continues, the UC asked Mr. Holley, "Whats the youngest you've been with," and Mr. Holley replied, "Interesting. Wanna watch me rub mine against her puffy?[4] Maybe she can lose it to a BBC like a real good girl" and "Age 10." The UC stated to Mr. Holley, "Ok my girls 9 want to make sure you're ok with that." Mr. Holley replied "All good, territory im familiar with. Best part is we can make it a regular thing. And train her for life as a slut."

During the chat the UC asked Mr. Holley if all he wanted to do was rub her "puffy," referring to his purported nine-year-old daughter, and Mr. Holley responded with, "No sir. Get

---

[3] The bull is a man who is introduced to the relationship to have sex with the wife or female partner.
[4] A puffy is commonly referred to as a prepubescent vagina.

3

sucked by her, have her give me a handjob, footjob, rub her pretty lil nipples and bust nuts on her and eventually in her" and "The 1 thing i want the most: her pussy. I want her virginity."

During the chat, the UC sent an image of his purported daughter.[5] Mr. Holley responded, "Oh wow, thats perfect honestly. I am built just right for her," and sent an image of an erect penis. The UC replied, "She's going to love it." Mr. Holley replied, "Fit for a princess like her. Best part is we have plenty of time. I want her to see it, play with it, get used to it. Compare it. BBC for her is like giving her keys to her first car." Mr. Holley referred to himself as the girl's "trainer: just like an athlete, we gotta work her body out right to prepare her for a life of being a slut for daddy."

The UC asked Mr. Holley additional questions about the ten-year-old that Mr. Holley referenced. Mr. Holley sent an image of a young girl in response. This image was not child sexual abuse material—the child was clothed with the camera focused on her feet. Mr. Holley said that he met the girl's mother on the same fetish website, and that the mother wanted Mr. Holley to "spend time" with the girl "to get back at" the girl's father. Mr. Holley said he "played" at the mother's house.

Mr. Holley said he did not have any videos of the girl, but "I wish I had the old ones." Mr. Holley went on to say, "Imagine all the hot movies we will make. Even when she's jerking me off it will be the hottest thing ever seen. Young hands working an older cock." On another occasion, Mr. Holley said, "I look forward to making some [pornography] with you and [purported daughter's name]." Mr. Holley told the UC that he had "masks of [sic] you want to film porn." The UC told Mr. Holley to bring the masks, and Mr. Holley said, "I will! She will be a hot lil slut."

While the chat continued, the UC and Mr. Holley discussed scheduling a meet for the purpose of Mr. Holley traveling to the UC's purported residence in DC to engage in vaginal

---

[5] The image sent by the UC did not depict a real child or sexual abuse material.

4

intercourse and sexual activity with the UC's purported daughter. The UC and Mr. Holly had a phone conversation confirming details of their meet-up. Mr. Holley confirmed that he would be traveling to the UC's residence on September 4, 2025, at 11 AM to engage in sexual intercourse with the UC's purported daughter. However, Mr. Holley subsequently rescheduled the meeting to September 10, 2025.

Mr. Holley was identified using law enforcement databases. The phone number 443-834-XXXX was associated with Jordan Holley, born on XX/XX/1991, in numerous law enforcement citations and databases. Mr. Holley has multiple prior traffic citations from the Baltimore County (MD) Police Department. The phone number Mr. Holley provided in connection with those citations was 443-834-XXXX. According to law enforcement databases, Holley currently resides at XXXX Hanwell Rd, Randallstown, MD 21133. This is consistent with FeetAddict202 indicating his location was in Maryland. Owings Mill is approximately a ten-minute drive from Randallstown, Maryland.

On September 04, 2025, Mr. Holley advised that he had to cover meetings at work and that he would not be able to meet at the arranged time. Mr. Holley and the UC discussed rescheduling, and Mr. Holley confirmed that he would be traveling to meet the UC at the prearranged location and then to the UC's residence on September 10, 2025, at 11:30 AM to engage in sexual intercourse with the UC's purported daughter.

On September 10, 2025, at approximately 12:25 PM, Mr. Holley arrived at the prearranged location and sat with the UC. The UC asked if he was Brutus, the name that Mr. Holley advised during the conversation with the UC. The UC then stated, "this has been a long time coming, can't wait," to which Mr. Holley stated, "yes, can't wait." Mr. Holley was placed under arrest at that point by members of the FBI/MPD Child Exploitation Task Force members.

Holley was identified as Jordan Holley, DOB: XX/XX/1991, with an address of XXXX Hanwell Rd, Ransdallstown, MD 21133, through his Maryland driver's license which he had on his person.

Law enforcement recovered a mask, sex toys, condoms, and lubricant in a ziplock bag in Holley's vehicle.

*Figure 1:*



*Figure 2:*



Investigators conducted a custodial interview, and Mr. Holley waived his Miranda rights. During the interview, Mr. Holley advised that he travelled from Maryland to Washington, DC, to meet with the UC. Mr. Holley admitted to arranging to travel to Washington, DC, to meet the UC and his purported nine-year-old child and have vaginal intercourse with the child. However, Mr. Holley stated that the sexually exploitive conversation and meeting was essentially a ruse. Mr. Holley claimed he wanted to learn more about the UC and then contact law enforcement to report the UC.

During Mr. Holley's interview, he repeatedly provided inconsistent statements and downplayed evidence. For example:

- Mr. Holley initially told law enforcement that the scheduled meeting on September 4, 2025 did not happen because the UC rescheduled it. When interviewers later pushed Mr. Holley and said they knew that Mr. Holley was the

7

- one to reschedule the meeting, Mr. Holley revised his statement and said it was rescheduled because of "something on his end and my end."

- When asked if there was a mask in his car, Mr. Holley initially said no. When law enforcement later confronted Mr. Holley that there was a mask in the car, he claimed it was "for the winter time."

- When asked if there were condoms in the car, Mr. Holley said he had cologne in the car but that "it's not related." Mr. Holley did not answer the question about condoms. When law enforcement later confronted Mr. Holley about the sex toys and condoms found in the car, Mr. Holley said, "that's what I was saying, I had stuff in the car, but I haven't used any of it." Mr. Holley had not previously told law enforcement that those items were in his car.

- Mr. Holley acknowledged sending an image of a minor child to the UC but said the photo was "from the internet." Mr. Holley said he sought the picture out online to "try to convince" the UC.

## PROCEDURAL HISTORY

The defendant made his initial appearance before this court on September 11, 2025. On the government's motion, the defendant was held pending a detention hearing, which is scheduled for September 15, 2025. The government now respectfully submits this memorandum in support of its motion for pretrial detention.

## APPLICABLE LEGAL STANDARD

The defendant is charged with Travel with Intent to Engage in Illicit Sexual Conduct, in violation of 18 U.S.C. § 2423(b). Under to 18 U.S.C. § 3142(e)(3)(E), a violation of § 2423(b) involving a minor victim carries a rebuttable presumption of detention, where it is to be

*presumed* that no combination of conditions will protect the community or assure the defendant's return.  § 3142(e)(3)(E).  This presumption "operate[s] at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption."  *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985); *United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985) (observing that the presumptions in § 3142(e) "are rebutted when the defendant meets a burden of production by coming forward with some evidence that he will not flee or endanger the community if released"); *see also United States v. Hir,* 517 F.3d 1081, 1086 (9th Cir. 2008).  Even if the defendant does not pose a flight risk, danger to the community by itself is a sufficient reason to order pretrial detention.  *United States v. Salerno*, 481 U.S. 739, 755 (1987).

In determining whether the defendant has overcome that presumption, the Court must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.  *See* 18 U.S.C. § 3142(g).  Even when the defendant has offered evidence to rebut the presumption of dangerousness, the presumption remains a factor in the court's analysis of the § 3142(g) factors.  *See United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1983) ("Use of that word [rebutted] in this context is somewhat misleading because the rebutted presumption is not erased.  Instead, it remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)."). As the Sixth Circuit has observed, "[t]he presumption [of dangerousness] remains as a factor because it is not simply an evidentiary tool designed for the courts.  Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should

9

ordinarily be detained prior to trial." *United States v. Stone*, 608 F.3d 939, 945-46 (6th Cir. 2010) ("To rebut the presumption, therefore, a defendant should 'present all the special features of his case' that take it outside 'the congressional paradigm.'").

## ANALYSIS

For the reasons addressed below, the factors outline in 18 U.S.C. § 3142(g) weigh in favor of detention and Mr. Holley cannot rebut the presumption that he shall remain detained. Mr. Holley poses an unmitigable risk to community safety.

### A. Nature and Circumstances of the Charged Offense

The nature and circumstances of the charged offense weigh heavily in favor of detention. Here, the defendant traveled from Maryland into the District with the intention of having sexual intercourse with a nine-year-old girl. This was no mere fantasy—the defendant described in clear, disturbing detail what he wanted to do to the girl. He described wanting to engage in multiple sexual acts with the child, including having vaginal intercourse with her in order to take her virginity. The defendant described previously meeting up with an adult to sexually abuse a ten-year-old girl. He discussed his eagerness to create child pornography and told the UC that he would bring materials to mask their identities. Despite having multiple opportunities to back away from the meetup with the officer, the defendant not only followed through on his attempt, but he brought sexual accessories along with him—including the mask he told the UC about that was for use in order to create child pornography.

The facts in this case are similar to those in *United States v. Breeden*, where District Court Judge Amy Berman Jackson detained the defendant noting that "this defendant did not simply express an interest in a sexual encounter with a minor, and he did not simply make arrangements for a sexual encounter with a minor, but he took the affirmative, unequivocal step of driving his

vehicle into the District of Columbia to arrive at the appointed time and place." *United States v. Breeden*, No. 15-MJ-0506 (AK-ABJ), 2015 WL 13310427, at *7 (D.D.C. Nov. 16, 2015). Moreover, the extreme dangerousness of this offenses is demonstrated by the fact that "but for the fact that defendant was communicating with an undercover officer, defendant could have come fact-to face with a minor and a willing parent" *Breeden*, 2015 WL 13310427, at *8. Indeed, if the Court believes the defendant's own statements, he has previously sexually abused a child using the exact same means.

Indeed, the charged offense both **(i)** is the basis for the statutory presumption of dangerousness and **(ii)** involves a minor victim, which are two factors this Court is required to consider in assessing the nature and circumstances of the offense. *See* 18 U.S.C.§ 3142(G)(1) ("The judicial officer shall . . . take into account the available information concerning— the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves a minor victim . . . ."). *See Breeden*, 2015 WL 13310427, at *7 ("Congress specifically directed courts to consider whether a defendant is charged with a 'crime of violence' when assessing the nature and circumstances of the offense factor, and it designated a violation of section 2423(b) to be a crime of violence."); *accord United States v. Johnston*, No. 17-MJ-0046 (BAH), 2017 WL 4326390, at *4 (D.D.C. Sept. 28, 2017) (noting that a violation of Section 2423(b) "is a serious crime" subject to a rebuttable presumption of detention); *United States v. Beauchamp-Perez*, 822 F. Supp. 2d 7, 10 (D.D.C. 2011) ("With respect to the nature and circumstances of the offense, the charged offense is serious and involved traveling with intent to have sex with a twelve year-old minor victim. The Court finds that this factor supports detaining the defendant; indeed, it is the basis for the presumption in favor of detention.")  The seriousness of the offense is also reflected by Congress's judgment that those convicted of the

charged offense face up to 30 years' imprisonment upon conviction. *See* 18 U.S.C. § 2423(b); *Johnston*, 2017 WL 4326390, at *4 (considering, as factors weighing in favor of detention, that a conviction "allows for imprisonment up to 30 years" and that "the defendant may face substantial prison time").

Magistrate judges in this Court have also found that detention is appropriate in other cases involving the same criminal conduct. *United States v. Brockerman*, 25-cr-133 (RDM) (granting the government's motion to detain the defendant who was charged with traveling to the District of Columbia to have sex with an undercover agent's purported child); *United States v. White*, 24-cr-340 (DLF) (granting the government's motion to detain the defendant after he traveled to the District of Columbia to sexually abuse an undercover agent's child and distributed child pornography).

Accordingly, the nature and circumstances of the charged offense weigh heavily in favor of detention.

    **B.**    **The Weight of the Evidence Against the Defendant**

The weight of the evidence against the defendant is very strong and weighs in favor of detention. The government is in possession of the chats between the UC and the defendant, which are the evidence of the defendant's criminal conduct. As detailed above, the defendant engaged in extensive, detailed conversations with an undercover officer about his sexual interest in children and, made specific plans to sexually abuse the agent's purported nine-year-old daughter. The defendant made his intent toward the purported child perfectly clear: "get sucked by her, have her give me a handjob, footjob, rub her pretty lil nipples and bust nuts on her and eventually in her . . .The 1 thing i want the most: her pussy. I want her virginity." After describing his plan in disturbing detail, the defendant then acted to carry out his plan by driving in to the District and

meeting the undercover officer at a pre-determined location.

The defendant told law enforcement in his post-arrest interview that his intention was not in fact to have sexual intercourse with the child but to learn more information about the UC and then turn him into police. This claim is not supported by the defendant's own actions in preparing for the meeting. There is no evidence that he contacted law enforcement prior to the meetup or reported the UC's profile on the fetish life website.[6] But most critically, the defendant brought items to assist in his sexual abuse—sex toys, lubricant, condoms, and a mask to allow him to produce child pornography without being identified.

A district court must consider the weight of the evidence when assessing whether the defendant is a danger or poses a risk of flight and has broad discretion to determine the relative weight of each of the four Bail Reform Act factors. *See United States v. Blackson*, No. 23-CR-25 (BAH), 2023 WL 1778194, at *9 (D.D.C. Feb. 6, 2023), *aff'd*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023) ("First, nothing in the BRA's text requires or alludes to a differing weighing of the factors nor any hierarchy among the factors."). No factor is categorically of greater or lesser weight than the others. As the Second Circuit Court of Appeals observed:

> Although § 3142(g) of the Bail Reform Act lists various factors to consider, it says nothing about the relative weight a court should give them when deciding whether to release or detain a defendant. *See generally* 18 U.S.C. § 3142(g). That silence is unsurprising, because the weight given to each factor will inevitably vary from case to case, and might even vary depending on whether the inquiry relates to a defendant's danger or to his risk of flight. What is more, certain factors might interact with one another in a particular case in a way that alters a court's analysis of a defendant's danger to the community or flight risk.

---

[6] Mr. Holley claimed in his interview that he reported the UC's profile on the fetish website but the UC's profile was not removed. However, according to law enforcement, the fetish website is very proactive about removing profiles when they are reported for child exploitation material. Based on law enforcement's experience with the website, the UC believes Mr. Holley did not actually report the profile.

13

*United States v. Zhang*, 55 F.4th 141, 149-50 (2d Cir. 2022). In *Zhang*, the Second Circuit found that the district court gave appropriate weight to the second factor – the weight of the evidence – in determining that there was "significant evidence" that Zhang had in fact committed the charged murder. *Id.* at 150-51. Affirming the district court's relative reliance on the weight of the evidence in determining dangerousness, the court explained:

> In making a predictive assessment of the defendant's future dangerousness if released into the community, common sense and § 3142(g)(2) aligned with the district court's consideration of the strength of this evidence, especially coupled with the nature of the charged offense. It stands to reason that the more strongly the evidence indicated that the defendant committed the murder, the more likely he poses a danger to the community if released on bail.

*Id.* Similarly, in considering whether the defendant poses a risk of flight, the court explained that where "the evidence against a defendant is strong, it follows that the defendant faces an elevated risk of conviction (and of the attendant punishment), and therefore may present an elevated risk of flight. *Id.* at 151-52.

The *Zhang* court's analysis has been cited approvingly in the District Court of the District of Columbia in *Blackson*, and its analysis holds true here as well. *Blackson,* 2023 WL 1778194, at *9-10. The evidence against Mr. Holley is strong, suggesting a heightened danger to the community. The strength of the evidence strongly supports detention, as it indicates the significant risk of danger posed by the defendant.

### C. History and Characteristics of the Defendant

While the defendant does not have any criminal history, there is reason to believe that he has engaged in criminal activity prior to his conduct in this case. The defendant told the UC that he previously sexually abused a ten-year-old girl. He also said he had "experience" with fathers and daughters. There is no reason to believe that these were not truthful statements. Further, the defendant's use of common language and knowledge of information associated with individuals

14

who sexually abuse children support that this was not merely fantasy or conjecture. This evidence shows that the defendant's lack of criminal history does not accurately portray his history of criminal conduct.

Additionally, the absence of prior criminal convictions is not sufficient to rebut the statutory presumption of dangerousness on the facts of this case. *See, e.g. Breeden*, 2015 WL 13310427, at *7 ("But the inferences the defendant is asking the Court to draw do not go far enough. The Court is not certain that a lack of more incriminating evidence constitutes 'evidence' that rebuts the presumption arising from the undisputed facts of the case." (emphasis in original)); *Pope v. United States*, 739 A.2d 819, 826 (D.C. 1999) (explaining that, under the D.C. Code's rebuttable presumption, if a court makes the requisite finding that a defendant committed certain crimes, then the "defendant is presumed to be dangerous (and subject to preventive detention) even if his prior record is clean and if no other showing of dangerousness is made"). Thus, the defendant's history and characteristics weigh in favor of detention.

**D.    The Nature and Seriousness of the Danger to Any Person or the Community**

Finally, the sexual exploitation of children presents a serious danger to the community, which results in severe mental, emotional, and physical trauma to the countless children who are victimized by offenders like the defendant and others with a demonstrated sexual interest in children. It is this type of harm that led Congress to create the statutory presumption of detention in these cases.

The evidence in this case establishes that the defendant poses a grave danger to the community. As discussed above, the defendant admits to sexually abusing children in the past and is charged with traveling across state lines into the District of Columbia to sexually abuse a purported nine-year-old girl. The defendant also expressed an interest in child pornography,

lamenting the fact that he did not have any child pornography from his prior abuse and expressing interest in creating child pornography with the purported nine-year-old girl. The defendant took a substantial step toward this goal by bringing a mask, contained in the same bag as his condoms, sex toys, and lubricant, in order to mask his identity in any media. In addition, "the fact that the defendant poses a danger is presumed and is to be factored into the statutory analysis, even if some contrary evidence has been adduced." *Breeden*, 2015 WL 13310427, at *9 (citing *Stone*, 608 F.3d at 945–46).

## **CONCLUSION**

For all of the reasons set forth above, a consideration of the evidence in this case and the applicable statutory factors compels the conclusion that the defendant should be detained pending trial.

        Respectfully submitted,

        Jeanine Ferris Pirro
        United States Attorney

By:   */s/ Rachel Bohlen*
      Rachel Bohlen
      DC Bar No. 1010981
      Assistant United States Attorney
      601 D St NW
      Washington, DC 20530
      (202) 809-3575
      rachel.bohlen@usdoj.gov

**CERTIFICATE OF SERVICE**

On September 12, 2025, a copy of the foregoing was served upon all parties listed on the Electronic Case Filing (ECF) System.

>                         */s/ Rachel Bohlen*
>                         Rachel Bohlen
>                         Assistant United States Attorney